Parker, J,
This case is before the court by the way of appeal. The essential facts of the case are as follows: On the 10th day of August, 1894, William H. Schaff and J, B. Schaff, his father, being the owners of a stock of goods in Toledo, *493 sold the same to Albert W. Ensley and R. R, Kindig, for $2350. Two hundred dolíais of the purchase price was paid in cash. Joint notes of the purchasers were given for the remainder, the first being payable on the 10th of August, 1894, each succeeding note being payable three months after the lime of payment of the one preceding, and the notes are for $250 and $200 each, the whole amount being $2150. This'stock of goods was situated in a store building owned by William H. Schaff. The grocery business had been carried on in this store building by Wm. H, and Jno. B. Schaff prior to that time. At the time the stock of goods was sold, Schaff also gave to Ensley and Kin-dig a lease on the premises for one year with the privilege of occupying three years, the rental to be paid being $40 per month. The stock of goods was not removed from the store building where it had previously been situated and where the grocery business had been carried on by the Schaffs. Afterwards — in December, 1894, Kindig retired from the business, disposing of his interest to Ensley, and was released from all obligation to pay these notes, or the purchase money,except as to four notes of two hundred dollars each — $800, which had been secured by mortgage upon real estate owned by Dorothy Ensley, the wife of Albert W, Ensley, one of the defendants in this case. No further payment was made upon the purchase money for this stock of goods than the $200 paid at the time of the sale and a payment of $50 at a later date; but, besides the cash payments, groceries had been received by Schaff, for which he had given credit upon these notes, amounting to something less than $100.
This was the situation of the case in March, 1895, when Ensley — -who was then the sole owner of this stock of goods under this purchase — agreed to trade the stock of goods to one Ryan for a lot in the city of Toledo, which trade was subsequently carried-out, the stock being put in at $850, and *494 the price of the lot being $850. At the timé of the proposed transaction with Ryan,Ensley consulted Schaff as to this trade,and agreed with Schaff that, if he made the trade, the lot should be conveyed to him — Schaff; but first it was to be conveyed to Ensley, and by Ensley to Schaff; and it was further agreed between the parties that Schaff should allow and give to Ensley upon these notes,in consideration of the conveyance of this lot, a credit of $900, and that he should also credit to him the amount of the grocery bill as it-appeared at that date, and the $50 cash payment before-mentioned, which would make the whole amount of the credit $1069.87. This trade was made; a conveyance was made by Ryan to Ensley, but Ensley declines, or at least fails to niake a conveyance of the lot to Schaff, as agreed, and Schaff brings this action against Ensley and his wife to compel a conveyance of the property in pursuance of the agreement.
As I have said, one of the parties to the original contract involving the sale of the stock of goods and the other property included in the sale, was John B. Schaff, who has since deceased. It is contended here that the legal representatives of John B. Schaff should be parties plaintiff. But it appears that this contract for the conveyance of this property by Ryan to Ensley, and from Ensley to Schaff, was made with the plaintiff-William H. Schaff; and we hold with respect to that that if there is any enforceable right here, it is the right of William H. Schaff to have the conveyance made to him, and the question whether or not he shall account to another for any part of what he may receive through this litigation, is not now before us, and so need not be considered by us
Now it is contended by plaintiff that his rights under this contract for sale of this stock of goods and the other property which was sold at the same time, are such .that when he gave his eonsent to the trading of these goods and, *495 other property to Ryan for the lot, a trust resulted in his favor which is entorceable in a court of equity,under which he may compel the making of this conveyance by Ensley to himself; and he also claims that this right is made more clear by an express promise made on the occasion of the trading of this stock of goods to Ryan for the lot, The contract for this sale of the stock of goods reads as follows:
“Know all men by these presents, that we, William H. Shaff, and J. B. Shaff, of Toledo, Lucas county, Ohio, in consideration of 12350. in hand paid,has this day sold and delivered to Ensley &• Kindig the following described goods and chattels to-wit: In store building on lot Twenty-eight (28) Potter’s Addition to Toledo, Lucas county, Ohio, located on the corner of Oak Street and Woodville Street., Also one grey horse, one double harness, single harness, meat wagon, one large top wagon, one open wagon, and one cart; including everything in the barn on said premises appertaining to said grocery business excepting papers in the desk in said house, which is to be reserved. Also excepting counters, shelves, ice boxes and racks. Also excepting contents of gasoline house except the gasoline. Also excepting the chickens and ducks and can fruits belonging to the house.
“It is further stipulated between the parties hereto, that no liquor is to be sold on said premises; that the stock of' goods must be kept up to its present standard; that the stock of goods must not be sold or transferred, unless the notes given therefor, are fully paid or secured to be paid to the satisfaction of the grantor.
“William H. Schaff
“J. B. Schaff
“Ensley & Kindig, Part.
“R. R. Kindig
“A. W. Ensley.”
, Much depends in this case upon the construction given to this contract. The plea of the statute of frauds is interposed as a bar to the enforcement of this contract, or as a b^r to the enforcement"of the plaintiff’s claim. It is clear *496 that if there is a resulting trust, the statute of frauds is not a bar to its enforcement. It is equally clear under the authorities in Ohio, that an express trust may be supported notwithstanding the statute of frauds, and that those provisions of the English statute which prevented an express trust being raised except by writing, have never been incorporated in the statutes of Ohio. It has been held by the Supreme Court of Ohio in a number' of cases, that an express trust is enforceable though resting in parol.
According to our view of the case, upon this transaction-of'the exchange of this stock of goods for the lot, a trust arose in favor of William H.- Schaff,- partaking somewhat of the nature of a resulting trust, and somewhat of the nature of an express trust. It will be seen that the purchasers of this stock of goods were not authorized to sell, except at retail — -it is clearly implied that they are authorized to sell at retail. The stock of goods was to remain in the store where it had been at the time of the sale, and where the business had been carried on by Schaff, Any part of the goods sold at retail was to be replaced, so that the stock was to be kept intact. And then there is a further provision, that the stock of goods must not be sold or transferred — that is to say, the whole stock, unless the notes given therefor are fully paid, or secured to be paid, which, according to our view of the contract and the whole transaction, clearly implies, unless they are paid or otherwise secured to be paid, an understanding and agreement that the property sold should be held and bound as a security for the debt. Between the parties, it would be legally valid to reserve the title to the seller by parol. We are not hampered here, or bothered in any way by a consideration of the rights of any innocent purchaser or other person becoming interested in these goods without notice or knowledge of the rights of the seller. It is not clear that the' title of the goods was reserved; and yet much might be *497 urged on that head, and there is much in the contract that tends to support the conclusion that there was not an absolute transfer of the title to these goods; that the possession given to the purchaser was conditional, that there was a condition placed upon the jus disponendi— the right to dispose of the property — which is one of the chief elements of a perfect title to property, and that that was not conveyed to the purchaser. At common law the seller of property has a lien upon it for the purchase price. As to personal property,it is held that where there is an unconditional delivery of the property this lien is waived; but to operate as a waiver of the lien, the delivery must be unconditional; and it is competent for the parties to deliver the property, and yet, by parol, to reserve the lien. It appears to us that the intent and purpose fairly to be gathered from the words of this contract was to reserve this lien, notwithstanding the conditional delivery of the property; and even if there was no reservation of the title, or- of the common law lien, still we think that under the well-settled principles of equity there was an equitable lien; and it is of the same effect, for the purposes cf this case, whether the common law vendor’s lien was retained, or a mere equitable lien arose or was reserved. The'vendor reserved the right to control the disposition of the property, The purpose was to have the property remain intact as security, so that it might be reached by him for the satisfaction of this claim for the purchase money. This claim, it appears, at the time of the transaction with Ryan amounted to more than the value of the stock of goods then remaining,so that, the seller of the property was virtually then the owner of it, in equity. That fact was recognized by all the parties to the transaction at the time of the exchange of the property with Ryan. We think, therefore, that the plaintiff was the equitable owner of the lot conveyed by Ryan; that under the well-settled principles as to resulting trusts, *498 a trust resulted in favor of Schaff which may be enforced by compelling a conveyance of the property to him. In addition to that, there was an express agreement of Ensley at the time of the transaction, that if Mr. Schaff would consent to this exchange of property or trade, he would convey the lot received from Ryan to him — Schaff. This was clearly established by the testimony. After he had received the conveyance of the property,Ensley made the statement'to a^ witness that Mr. Schaff ought to be very well satisfied with the trade that he (Ensley) had made for him (Schaff), whereby he had acquired for him (Schaff) this property at a consideration of $900.
A. W. & E. H. Eckert, for Plaintiff.
Johnson Thurstm, for Defendant,
It follows, of course, that Dorothy Ensley has no right of dower that can be allowed to interfere with this claim, and that this is true also of the claim which is made for exemption in lieu of a homestead; therefore the decree will be as prayed for, requiring the conveyance of this lot to William H. Schaff, free from dower and claim for exemption in lieu of homestead. The costs will be divided equally,